### KENT v. MORRIS MILLS, Inc., et al.
### No. 8081.

Circuit Court of Appeals, Seventh Circuit.

Feb. 3, 1943.

Rehearing Denied March 12, 1943.

Charles J. Merriam, George A. Chritton, and Chritton, Wiles, Davies, Hirschl, Schroeder & Merriam, all of Chicago, Ill., for appellant.

Arthur H. Boettcher, Louis Cohen, and Brown, Jackson, Boettcher & Dienner, all of Chicago, Ill., for appellees.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

Plaintiff charged Morris Mills, Inc., with infringement of United States Patent No. 2,018,966. The patent was issued to Edward Miller, Harry L. Goodwin, Sr., and Edgar Miller, on October 29, 1935, upon an application filed November 25, 1932. It relates to the treatment of wheat in such a manner that the germ may be retained in the flour without injury to the keeping qualities of the flour.

The defenses by the corporation were non-infringement and a denial of title in the plaintiff. The defendant corporation also filed a counterclaim in which it asked that the plaintiff be declared not the owner of the patent, and that whatever rights she might have had in the patent be decreed to have expired on October 27, 1936; and that a certain document, referred to as an assignment, dated April 27, 1936, which had been recorded in the United States Patent Office April 28, 1936, be declared to be null and void; and that she be ordered to execute a quitclaim deed to Morris Mills, Inc., of any interest she might claim to have in the patent; that Morris Mills, Inc., be declared the owner of the patent; and for all proper relief.

The complaint was filed on May 17, 1941, and on or about July 26, 1941, proceedings were instituted in the same court for reorganization of the corporation under Chapter X of the Bankruptcy Act, and Fred E. Hummel became the trustee of the corporation under appointment of that court. The complaint was amended to include the trustee as a party defendant. He appeared and adopted the answer and counterclaim theretofore filed by Morris Mills, Inc.

The District Court made a special finding of facts and rendered its conclusions of law thereon adversely to the plaintiff. It concluded that the company was the equitable owner of the patent in suit and entitled to the legal title thereto, and that plaintiff was not the owner of the patent, and that she should execute to the trustee, within a limited time, her quitclaim deed for all interest claimed therein by her. A decree was entered accordingly and from it this appeal is prosecuted.

The facts before us are as follows: Both parties claim title from Goodwin, and it is agreed that it is not necessary for us to consider the title prior to that of Goodwin, and that patent No. 2,018,966 is the only one here involved.

On April 27, 1936, Goodwin assigned the patent here in suit to plaintiff, together with his undivided interest in four other patents. At the same time, by separate instrument, he also executed a power of attorney to her, authorizing her to grant licenses therefor in perpetuity. At the same time, by a separate instrument, he also entered into an agreement with her relating to these patents. Subsequently, by assignments from Goodwin and his co-

inventors, the Millers, Morris Mills, Inc., became the owner of the entire patent, subject, however, to whatever rights, if any, plaintiff might have therein under the three instruments executed on April 27, 1936, above referred to.

The paramount issue in this case is the construction of the three instruments, which are referred to as (1) the assignment, (2) the power of attorney and (3) the agreement.

The assignment is prefaced by the statements that Goodwin is the sole owner of patent No. 2,018,966, and claims an undivided interest in four other patents, the last two of which have expired; that plaintiff is desirous of acquiring Goodwin's entire interest therein. The document then proceeds:

" * * * that * * * in consideration of * * * $10 * * * the receipt of which is * * * acknowledged, together with other good and valuable consideration, I, * * * Harry L. Goodwin, Sr., * * * have sold, assigned and transferred, and by these presents do sell, assign and transfer unto * * * Constance Kent, the whole right, title and interest which I may have in and to * * * said patents, individually and collectively and in and to all the Letters Patent pertaining thereto; the same to be held and enjoyed by * * * Kent for her own use * * * and the use * * * of her legal representatives to the full end of the term of said patents for which Letters Patent have been issued or are to be issued * * * as fully and entirely as the same would have been held * * * by me had this assignment and sale not been made.

"The * * * assignor shall forthwith furnish to * * * assignee a * * * copy of the specifications of all of said patented processes as filed or may be filed * * * and also a full * * * description of the said patented process or processes and the mode of working or operating the same, so as to enable the assignee to obtain, should it be so determined, good and valid patent or patents in any and all foreign countries. In case any such foreign patent or patents shall be granted or made to * * * the patentee, then * * * the patentee shall forthwith transfer the same * * * unto the assignee, or as she may direct, and in the meantime shall stand possessed thereof in trust for said assignee. The patentee shall at * * * all times do every * * * thing which may be necessary to the end that * * * assignee may enjoy the full benefit of all the rights * * * hereinbefore assigned * * *.

"If at any time during the life of the * * * Letters Patent the patentee shall make further improvement in the * * * patented process or the mode of using the same or shall become the owner of any such improvement, then in every such case he shall convey and assign, if so required by the assignee, all such rights, benefits, improvements, etc., thereunder and the assignee herein shall be entitled to use the same as if it were a part of the original patent.

"It is further agreed that any suit brought against the assignee for alleged infringement of patent No. 2018966 * * * the patentee agrees to protect the assignee herein in the establishment of such patent rights under above mentioned letters * * *.

"Should, at any time, the signature or authorization of the patentee become necessary, pertaining to any of the rights * * * in patent No. 2018966 hereby assigned, the unequivocal right or irrevocable Power of Attorney is hereby granted to the assignee wherein she supply said signature or do any other act which shall be as binding on the assignor as if the signature had been subscribed or any other act done by the assignor in person.

"The assignor shall be entitled to dispose of or deal with any and all the patents and premises so assigned or agreed so to be, as the sole and absolute owner thereof without being subject to any control of or by the patentee.

"It is understood and agreed between the parties hereto that if at any time the assignee herein desires to dispose of the rights, title and interest herein assigned, that the assignor herein shall have the first right, privilege, option, refusal, or disposal on terms and conditions to be agreed upon at the time of any such transaction.

"Nothing herein contained shall be construed to constitute a partnership between assignor and the assignee or any of their representatives."

The Power of Attorney referred to as document number 2 is not the same as that set forth in a paragraph of the assignment. Document number 2 constitutes plaintiff the attorney for Goodwin, to sell licenses in perpetuity in all his "rights of

claim in and to letters patent No. 2,018,966 * * *" with full power of substitution or revocation. It, too, was acknowledged before a notary public, and has never been revoked formally.

The third document recites that Goodwin has assigned his interest in Letters Patent number 2,018,966 to plaintiff and that she has acquired the interest conveyed for the purpose of selling licenses of the same to various persons or corporations, and provides as follows:

"1. That the said Kent shall have the right to sell licenses only in perpetuity to said Letters Patent numbered 2,018,966, * * * for a period of six months from the date hereof to any person or persons or corporation.

"2. In the event the said Kent does desire an extension of the right to sell the said licenses in perpetuity in said Letters Patent after the expiration of the first six months, then she shall pay to the said Goodwin the sum of $10,000 for the said additional six months extension.

"3. At the expiration of one year from the date hereof if the said Kent shall desire an extension in which to sell licenses in perpetuity in said Letters Patent hereinbefore referred to, then on the payment of $10,000 the time shall be extended for one year.

"4. In the event the said Kent shall desire to extend the time in which to sell licenses in perpetuity * * * after the expiration of the said one year, she shall pay at the end of eighteen months from the date hereof, $12,500 and at the end of twenty-four months from the date hereof, an additional $12,500.

"5. In the event that the said Kent shall desire to extend the time in which to sell licenses in perpetuity * * * beyond the said twenty-four months, she shall pay, at the end of thirty months to the said Goodwin, the sum of $17,500 and at the expiration of thirty-six months an additional sum of $17,500 and so on hereafter."

This instrument was signed by both parties and acknowledged before a notary public. Plaintiff made none of these payments.

The District Court found that under the three instruments construed together, the plaintiff acquired only the right to grant licenses in perpetuity for a period of six months, and that the plaintiff's rights had expired and that she held only the naked legal title to the patent. Upon this construction, the District Court dismissed the complaint for lack of equity, and on the issues joined, upon the counterclaim decreed that Morris Mills, Inc., was the equitable owner of the patent and was entitled to the legal title, and that plaintiff should transfer the legal title of the patent to appellee, Hummel, trustee of the defendant corporation. It further decreed that plaintiff should deliver to him her copies of the three instruments executed on April 27, 1936.

Plaintiff contends that the last-named document, referred to as the agreement, limited nothing but her right to sell licenses in perpetuity, and that except for that limitation it in no way affected the outright assignment in the first document referred to as the assignment. She further contends that the unrevoked power of attorney of Goodwin to her supplied the deficiency, if any remedial contract was necessary.

■ It is conceded by the parties hereto that the three agreements executed on April 27, 1936, must be construed together in order to ascertain, if possible, the intention of the parties thereto. From the record it is not clear as to the order in which the instruments were prepared and executed, and it is not important that we should know definitely, because they were all executed and signed on the same day and at the same conference, and for this reason we think the intention of the parties cannot be ascertained without construing the instruments together. From reading the assignment separately, one would naturally conclude that Goodwin thereby conveyed all of his interest to Mrs. Kent in the patent in suit, and that there was nothing further left in his name which could form the basis of any other contract, so far as the patent is concerned. However, the power of attorney and the agreement, which are separate instruments, are so radically inconsistent with the assignment as to cause us to wonder whether the parties had any fixed purpose.

■ There is one allegation in the assignment which suggests further inquiry as to the real consideration. It is stated to be $10, together with other good and valuable consideration. This information is found in the agreement and it is contractual, and there we discover that the

parties themselves have placed the value upon the thing assigned at from $10,000 to $17,500 for the mere right to sell licenses in perpetuity for certain designated periods. If the complete intention of the parties was expressed in the assignment it was unnecessary for the additional agreement to be made, for every right granted to Mrs. Kent under the agreement, and more, was included in the assignment. In other words, the complete title of Goodwin, and his rights thereunder, were assigned to Mrs. Kent, and those rights must be considered as having been limited by the terms of the agreement if that instrument is to be given any effect at all.

 Plaintiff, however, suggests that the assignment cannot be limited by the terms of the agreement under the same rule that governs the execution of deeds wherein it is stated that an absolute grant in a deed cannot be limited by a subsequent repugnant clause. See Roof v. Rule, 348 Ill. 370, 371, 180 N.E. 807, 84 A.L.R. 1047. This is not a correct statement of the ruling in that case. It merely held that where a deed contains an absolute grant, the estate will not be limited by a repugnant habendum clause. Under the evidence before us, it cannot be said that the agreement is in any sense an habendum clause to the assignment. Under these circumstances we feel impelled to hold that the true substance of the assignment, as contemplated by the parties, was the right to sell licenses only in perpetuity under the patent. This seems to be the construction which plaintiff placed upon the three instruments. The same phrase is incorporated in the power of attorney, and all the instruments were prepared by plaintiff's attorneys. It would seem unlikely that plaintiff construed the three instruments differently from our construction, or she would not have insisted upon the execution of the agreement, for by the assignment plaintiff received everything she desired or could possibly get from Goodwin. We think the District Court correctly construed the intention of the parties. She has not paid any part of the consideration, nor does the record disclose that she has sold any licenses. Under the circumstances equity cannot grant her the relief she demands.

Plaintiff urges with respect to the phrase "Kent shall have the right to sell licenses only in perpetuity to said letters patent No. 2,018,966," that the word "only" should be eliminated from its present position and placed immediately after the figures, in order to properly present the intention of the parties. We are unable to find anything in the record which would warrant such transposition, or that such transposition, if made, would warrant a different construction.

Plaintiff further urges that the court erred in not permitting certain admissions of Goodwin to be admitted, to the effect that he assigned the patent to Mrs. Kent, and that she would take care of his family out of the proceeds, and that he was doing this because he expected injury or death from some outside source. This was offered upon the theory that the entire transaction between the parties was one of common enterprise and joint adventure. This might well have been admitted as bearing upon the intention of the parties, but we are convinced that if there was error in not admitting it, it was a harmless error, for if admitted it would further reenforce our conclusion that under the three instruments, neither of the parties intended that the complete title and use of the patent had passed to the plaintiff. Certainly this would be true in the absence of payment of any consideration whatever.

The decree is affirmed.